731 P.2d 797

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Verna L. SIMONS, Defendant-Appellant.**

**No. 15806.**

Court of Appeals of Idaho.

Jan. 14, 1987.

Petition for Review Denied March 30, 1987.

Kenneth F. White, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Verna Simons pled guilty to involuntary manslaughter. She was sentenced to the custody of the board of correction for an indeterminate ten-year period. On appeal, she raises two issues: (1) whether the district court abused its discretion in denying Simons' postsentence motion to withdraw her plea; and (2) whether the ten-year indeterminate sentence was an abuse of the court's sentencing discretion. We hold that the district court did not abuse its discretion in either respect. We affirm.

On an evening in January, 1984, Verna Simons left the house she shared with J.D. Jameson to drive to Caldwell, Idaho, about eight miles away. She sought the shelter of her parents' home in Caldwell because of mistreatment of her by Jameson. Apparently, Jameson approached Simons' automobile as she was preparing to leave and attempted to dissuade her. Simons locked the doors and drove away. Unfortunately, Jameson's hand became caught in the passenger door between the window and frame. He was dragged to his death. Simons contends she was not aware that the victim was attached to her vehicle until she was stopped by police in Caldwell.

Simons was charged initially with second degree murder. *See* I.C. § 18–4001. Pursuant to a plea agreement, Simons pled guilty to involuntary manslaughter—the unlawful killing of a human being, without malice, in perpetration of an unlawful act, or in the commission of a lawful act without due caution and circumspection. *See* I.C. § 18–4006(2). In Idaho, involuntary manslaughter carries a maximum penalty of a $10,000 fine and imprisonment for ten years. I.C. § 18–4007(2).[1] Following an extended sentencing hearing before District Judge Williams, Simons received an indeterminate ten-year sentence.

During the sentencing hearing, defense counsel became aware of additional evidence relating to Simons' mental and physical condition immediately following the accident. After the sentence was pronounced, Simons filed a notice of appeal. While her appeal was pending, Simons moved to withdraw her plea pursuant to I.C.R. 33(c). The motion was heard by District Judge Doolittle. Judge Doolittle found that the necessary manifest injustice required by I.C.R. 33(c) had not been

---

1. We note that the crime of vehicular manslaughter carries a maximum of only seven years. I.C. § 18–4007(3). Simons plea bar- gained to involuntary manslaughter and has not challenged the application of this statute.

shown and denied the motion. Thus, we are asked to review both the sentence and the denial of the postsentence motion to withdraw Simons' plea.

## I

We first review Judge Doolittle's decision denying Simons' motion to withdraw her plea. We begin by acknowledging the following principles relative to pleas of guilty and motions to withdraw such pleas.

## A

■ A plea of guilty has the same force and effect as a judgment rendered after a full trial on the merits. *Lockard v. State,* 92 Idaho 813, 451 P.2d 1014 (1969). Like the verdict of a jury it is conclusive as to the facts. The court is left with "nothing to do but give judgment and sentence." *Id.* at 818, 451 P.2d at 1019, *quoting Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). Idaho Criminal Rule 33(c) reads: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." Our neighboring state of Washington describes "manifest injustice," for purposes of its comparable rule, as an injustice that is obvious, directly observable, overt, and not obscure. *State v. Norval,* 35 Wash.App. 775, 669 P.2d 1264 (1983). Denial of due process was deemed manifest injustice as a matter of law under the former comparable Federal Rule of Criminal Procedure 32(d). *United States v. Crusco,* 536 F.2d 21 (3d Cir.1976).

Under Rule 33(c) a stricter standard is applied following sentencing to insure that the accused does not plead guilty merely to test the weight of potential punishment and then to withdraw the plea if the sentence is unexpectedly severe. *State v. Freeman,* 110 Idaho 117, 714 P.2d 86 (Ct.App.1986); *State v. Jackson,* 96 Idaho 584, 532 P.2d 926 (1975). A lesser standard would undermine respect for the courts and waste the

time and effort devoted to the sentencing process. *Kadwell v. United States,* 315 F.2d 667 (9th Cir.1963).

A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court. *State v. Creech,* 109 Idaho 592, 710 P.2d 502 (1985); *State v. Freeman, supra.* Appellate review of the denial of a motion to withdraw a plea is limited to whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *State v. Freeman, supra.* Ordinarily a plea knowingly, intelligently and voluntarily entered may not be withdrawn after sentencing. We look to the whole record to determine whether it is manifestly unjust to preclude the defendant from withdrawing a guilty plea. *State v. Creech, supra.*

According to § 2.1(a)(ii) of the ABA STANDARDS RELATING TO PLEAS OF GUILTY (1968):

Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed;

(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement; or

(5) he did not receive the charge or sentence concessions contemplated by the plea agreement concurred in by the court, and he did not affirm his plea after being advised that the court no longer concurred and being called upon to either affirm or withdraw his plea.

A plea may be withdrawn without an allegation that the defendant is innocent of the charge to which the plea was entered. *Id.*

*See also* C. WHITEHEAD, CRIMINAL PROCEDURE: AN ANALYSIS OF CONSTITUTIONAL CASES AND CONCEPTS § 21.04 (1980) (discussing the ABA STANDARDS).

## B

We now turn to the application of the foregoing principles to Simons' case. The jail matron who attended to Simons immediately following her arrest had knowledge that Simons was severely disoriented upon initial incarceration. In addition, she was prepared to testify that Simons exhibited physical symptoms of injuries that might have been recently inflicted. The state did not provide this information to Simons or to her counsel. In response to defense inquiries, the jailer indicated that all relevant information was contained in her written report. The report did not contain this information. Her knowledge was not otherwise made available to the defense. During the sentencing hearing, the jailer independently contacted Simons' counsel and revealed this information. However, Simons did not then seek to withdraw her plea. She waited until the sentence had been determined.

Simons argues that this evidence of her mental and physical condition—"discovered" following her plea of guilty—was material to her second-degree murder defense. Had she been aware of this information, she contends she would have had a stronger case and, therefore, would not have pled guilty to the lesser offense of involuntary manslaughter. Specifically Simons argues that this information was material to her claim that she was fleeing from Jameson in fear of bodily harm or death; that it supports her claim that she was not aware Jameson was attached to the vehicle; that it would have been of assistance to her counsel in their investigation; and, that it could have been used to explain her original, disjointed account of the events surrounding Jameson's death.

Simons contends that constitutional due process imposes a duty upon the state to provide such exculpatory evidence to the defense. Therefore, she seeks to withdraw her plea as one not knowingly or intelligently entered, but entered due to the coercion and deception of the prosecution. Alternatively, she contends that the unavailability of this evidence rendered her counsel ineffective and inadequate because counsel could not competently evaluate her case.

Simons points to her discovery request under Idaho Criminal Rule 16(b), filed with the court before she pled guilty, seeking:

> All statements, documents, and tangible items relating to the booking in and/or incarceration of the Defendant at the Canyon County Jail, including but not limited to booking sheets, photographs, mug shots, attorney logs, visitors logs, security checks, medications, dispatch logs, tape recordings, any and all progress notes, reports and/or documents relating to or referring in any way to the Defendant.

### 1. *The Prosecutor's duty to disclose.*

The state argues that Simons' discovery request did not cover the particular information at issue here. The state contends that the jailer's personal knowledge does not fall within "statements, documents, and tangible items." We agree. This request related to tangible items in the prosecutor's possession. The knowledge of possible defense witnesses or similar intangible exculpatory information was apparently not specifically requested. Thus I.C.R. 16(b) is not applicable. Nor was the jailer a potential prosecution witness. Thus the state was not required to include her name on its witness list. *See* I.C.R. 16(b)(6). However, this conclusion does not end our inquiry.

■ The state has a duty to provide all exculpatory or possibly exculpatory material, whether requested or not. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977). "[T]here are situations in which evidence is obviously of such substantial nature to the defense that elementary fairness requires it to be disclosed even without a specific request. For though the attorney for the sovereign

must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that 'justice shall be done.'" *United States v. Agurs, supra,* 427 U.S. at 110–111, 96 S.Ct. at 2400–2401.

Due process requires that the accused be informed of exculpatory information in the prosecutor's possession.[2] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Merrifield,* 109 Idaho 11, 704 P.2d 343 (Ct.App.1985). *See generally* Note, *The Prosecutor's Duty to Disclose Exculpatory Evidence,* 14 IDAHO L. REV. 223 (1977). It is the duty of the prosecutor to make available all evidence which tends to aid in ascertaining the truth. *State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972). *See generally,* Annotation, *Right of Accused in State Courts to Inspection or Disclosure of Evidence in Possession of Prosecution,* 7 A.L.R.3d 8 (1966). This right extends to the existence of witnesses important to the defense. *Id.; Schwartzmiller v. State,* 108 Idaho 329, 699 P.2d 429 (Ct.App.1985).

However, this duty is imposed only if the evidence is exclupatory. The prosecution is not compelled to volunteer all information which may assist the defense in preparing for trial. *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980).

■ We are compelled to agree with Simons that the information held by the jailer was exculpatory. That is, it tended to negate the guilt of the accused or would tend to reduce punishment. Evidence supporting an excuse of flight in fear of bodily harm might have been utilized by the defense either as a defense or in mitigation of the crime of second-degree murder. In addition, an awareness of the jailer's knowledge might have led defense counsel to other evidence. This information was in the possession of an employee of the sheriff's office, but was not made available to the defense.

However, the failure of the state to reveal exculpatory evidence will not result in a reversal unless the evidence is "material." In *State v. Leatherwood,* 104 Idaho 100, 656 P.2d 760 (Ct.App.1982), we held that, when a defendant has been convicted at trial, withheld evidence is "material" only if, viewed in relation to all competent evidence admitted at trial, it appears to raise a reasonable doubt concerning the defendant's guilt. We urged adoption of this "unified standard of materiality" for all withheld-evidence cases. Failure to disclose such evidence is a denial of due process irrespective of the good or bad faith of the prosecutor. *Brady v. Maryland, supra; State v. Leatherwood, supra.*

Simons argues that the evidence withheld by the state was "material." She contends that the state's failure to supply this information resulted in her counsel being unable to effectively assist her in her choice of pleas. The standard for judging any claim of ineffective counsel is whether counsel's performance so undermined the proper functioning of the adversarial process that the proceedings cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Maxfield v. State,* 108 Idaho 493, 700 P.2d 115 (Ct.App.1985).

We note that the United States Supreme Court has recently held the *Strickland* incompetence-of-counsel test also applicable to determining the materiality of withheld information.[3]

We find the Strickland formulation of the Agurs test for materiality sufficiently flexible to cover the "no request,"

---

**2.** Idaho Criminal Rule 16(a) also requires the prosecuting attorney to automatically disclose any information in his possession "which tends to negate the guilt of the accused as to the offense charged. . . ." We do not discuss Rule 16(a) separately because the prosecutor's responsibility under the due process clause and under Rule 16(a) appears to be coextensive. *See Schwartzmiller v. State,* 108 Idaho 329, 333

n. 3, 699 P.2d 429, 433 n. 3 (Ct.App.1985); *State v. McCoy,* 100 Idaho 753, 605 P.2d 517 (1980).

**3.** We recognize that *Bagley* is a plurality decision in this respect, but find its reasoning particularly persuasive in light of the Idaho approach to "materiality" articulated in *Leatherwood.*

"general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985).

At first blush it may appear that we need not reach Simons' argument, as we have held that a plea of guilty waives any right to disclosure of evidence by the prosecutor. *See Schmidt v. State,* 103 Idaho 340, 647 P.2d 796 (Ct.App.1982). However, if exculpatory evidence is withheld *and material,* then as the tests are essentially the same, Simons was denied constitutionally guaranteed effective assistance of counsel and will not be bound by her plea. *E.g. Zacek v. Brewer,* 241 N.W.2d 41 (Ia.1976). Thus we conduct our analysis according to the test as set forth in *Leatherwood, Strickland* and *Bagley.*

The *Strickland* test has two components. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defendant. *Strickland v. Washington, supra.* The comments accompanying section 2.1(a)(ii) of the ABA STANDARDS RELATING TO PLEAS OF GUILTY (Approved Draft 1968), describe denial of effective assistance of counsel as including "those cases in which there has been a significant interference with retained or appointed counsel's opportunity to represent effectively his client's interests prior to receipt of the plea. . . ."

In this case, before entering her plea Simons already possessed her personal, albeit limited and confused, knowledge of the circumstances surrounding and preceding Jameson's death. Simons' counsel also had access to the reports of physicians who examined Simons following her initial incarceration. In addition, her counsel's investigation had generated sufficient historical evidence to stimulate consideration of a battered-woman defense.

We have reviewed the record and are not persuaded that defense counsel's performance was substantially hampered by the state's withholding of this information. The "battered-woman defense" has not been directly addressed by our appellate courts and is thus of questionable value. Simons' counsel conducted an otherwise thorough investigation of all possible defenses and mitigation possibilities. Although Simons' mental capacity was limited immediately after her arrest, she apparently had recovered sufficiently to assist in her own defense prior to entering her plea.

Simons' plea was in all other respects knowing, intelligent and voluntary. Simons pled guilty to the charge of involuntary manslaughter. It is well established that to be valid a plea must be made freely, voluntarily, and with an understanding of the consequences of the plea. *State v. Mooneyham,* 96 Idaho 145, 525 P.2d 340 (1974); *Lockard v. State,* 92 Idaho 813, 451 P.2d 1014 (1969). Simons was fully interrogated and informed by the district judge of the implications of her plea, in accordance with the standards set forth in *State v. Howell,* 104 Idaho 393, 659 P.2d 147 (Ct. App.1983), and *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976). Other than to the extent that she and her counsel were unaware of the jailer's knowledge, Simons does not contend her guilty plea was otherwise involuntary or uninformed. The voluntariness of a plea can be determined only from consideration of all the relevant circumstances. *State v. Turner,* 95 Idaho 206, 506 P.2d 103 (1973). If a plea is voluntary, the trial court need not permit withdrawal of the plea. *State v. Hinkley,* 93 Idaho 872, 477 P.2d 495 (1970). Simons admitted all elements of the charge of involuntary manslaughter.

In addition, as noted earlier, Simons' counsel became aware of the jailer's knowledge during the sentencing hearing. A corollary of the prosecutor's duty to dis-

close information is the defense counsel's duty to use due diligence in representing the defendant. *See* Annotation, *Withholding or Suppression of Evidence by Prosecution in Criminal Case as Vitiating Conviction* 34 A.L.R.3d 16 § 13 (1970). Simons' attorneys chose to utilize this evidence in mitigation at the sentencing hearing, instead of seeking a continuance and moving to withdraw the plea before sentence was pronounced. Simons has not alleged that the attorneys were ineffective for this reason. The choice was a tactical one which appellate courts ordinarily will not second-guess. The fact remains, however, that a stricter test is applicable to motions to withdraw a plea after a sentence has been pronounced.

Under these circumstances, we hold that the state's failure to disclose the jailer's information did not so prejudice Simons as to undermine confidence in the outcome of the proceedings. The district court did not abuse its discretion in finding no manifest injustice.

### 2. Sanction for prosecutor's conduct.

■ Alternatively Simons argues that the plea should be set aside as a form of sanction for prosecutorial misconduct. Simons would have us apply a rule analogous to the exclusionary rule to dissuade prosecutors from failing to disclose information during plea negotiations. Simons argues that other sanctions for professional misconduct are rarely applied and are insufficient to curb abuse. We believe that such a ruling is not warranted. The information withheld by the state did not substantially hamper Simons and her counsel in the plea bargaining process. We note again that where the defense counsel is rendered unable to provide effective assistance, due to the state's failure to disclose exculpatory and material evidence, a plea may be withdrawn by timely motion. We expect that prosecutors will comply with both the spirit and letter of the disclosure rule in seeking justice, making application of this rule a rare event.

## II

■ Simons also challenges her ten-year indeterminate sentence as an abuse of the district court's discretion. She argues that probation would have been more appropriate than imprisonment. The choice of probation or confinement is committed to the sound discretion of the trial judge. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). The record indicates that the sentencing judge was particularly concerned with the seriousness of the crime. In addition, he determined that imprisonment would be an appropriate punishment and could deter others. We cannot say that the court abused its discretion in choosing imprisonment instead of probation. *See* I.C. § 19–2521.

Ten years is the maximum term of imprisonment for involuntary manslaughter. A sentence within the statutory maximum will not be set aside absent an abuse of discretion. *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). For purposes of our review of the reasonableness of an indeterminate sentence we deem the defendant's period of confinement to be one-third of the period, or forty months in this case. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982); *see* I.C. § 20–223. Although this was Simons' first offense, the crime appears to have involved a high degree of negligence. Simons admitted Jameson's death occurred when she was driving the vehicle while intoxicated. The record suggests that a sober individual exercising due care and ordinary vigilance would have been aware of the victim's presence and have taken appropriate steps to avoid doing serious harm.

A term of confinement is reasonable to the extent it appears necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution. *State v. Toohill, supra.* Here, during the extensive testimony at the sentencing hearing the court had an unusual opportunity to observe the defendant and to examine the possible aggravating and mitigating circumstances surrounding

the crime. Apparently the court was not persuaded that a likely possibility of rehabilitation existed. In sentencing Simons the judge also addressed the deterrence and retribution goals set forth in *Toohill.*

Having examined the record, we hold that the district court did not abuse its discretion either in determining that imprisonment was appropriate pursuant to the criteria of I.C. § 19–2521 or in deciding to impose a ten-year, indeterminate sentence. The order denying Simons' motion to withdraw her plea, and the judgment of conviction for involuntary manslaughter—including the sentence imposed by the district court—are affirmed.

BURNETT and SWANSTROM, JJ., concur.