816 P.2d 364

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dohn Robert JOHNSON, Defendant–Appellant.**

No. 18400.

Court of Appeals of Idaho.

July 31, 1991.

Walker & Reagan, Coeur d'Alene, for appellant. Glen E. Walker, argued.

Larry J. EchoHawk, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., argued, Boise, for respondent.

WALTERS, Chief Judge.

In this case we are asked to determine whether the district court erred when it denied Dohn Johnson's motion to withdraw his plea of guilty to soliciting a sexual act. We hold that the court erred in denying the motion. We vacate the judgment of conviction and remand this case with direction to permit withdrawal of the guilty plea.

Under a plea agreement, Johnson pled guilty to charges of soliciting an infamous crime against nature and inattentive driving. Before sentencing, he moved to withdraw his plea to the solicitation charge. The motion was denied. On appeal, Johnson asserts that when he pled guilty he was acting without knowledge of two previously unproduced police reports which he claims contained exculpatory and material information and which the state had a duty to produce. Johnson claims that the information in the reports negated elements of the solicitation charge, tended to reduce the appropriate punishment, and that withdrawal of the plea would have resulted in no prejudice to the state. We agree. Because our conclusion is based primarily on the belatedly produced police reports and the district court's conclusion regarding them, we decline to address Johnson's additional arguments that he received ineffective assistance of counsel and that he did not enter his plea knowingly, voluntarily or intelligently.

### Facts and Procedual Posture

A few days before Christmas, 1988, Dohn Johnson was drinking heavily at the Cove Bowl bowling alley in Coeur d'Alene. During the evening he went to the restroom. While there, E.B., a local sixteen-year-old male and an alleged victim, also entered the restroom. The two men started talking. Johnson asserts that E.B. said he was from California, needed money to return, and that he would do anything, including sex, to get the money. E.B. gave a statement in which he asserted that after Johnson initiated the conversation, he blocked E.B.'s exit from the restroom, asked him if he wanted to make some money, suggested a sexual encounter, and touched E.B.'s genitals through his jeans. E.B. stated that, after a few minutes, he was able to "dart around" Johnson, get out of the restroom and back to his friends, whom he told of the incident and of his desire to get Johnson in trouble.

Johnson returned to the bar. When Johnson left for the evening, E.B. and a friend followed him to his parked pickup truck. After a brief conversation apparently initiated by the boys, the three got into the truck. They then drove to the back of the bowling alley where allegedly a sexual encounter was to take place. Either Johnson flashed some money or placed a twenty-dollar bill on the dashboard, intending that it would be given to the boys for sex. The boys later stated that Johnson undid their pants and touched their penises. Johnson, however, maintains that at the most he may have brushed the leg of E.B. who was sitting next to him. After a few minutes, Johnson thought that he was going to get mugged, so he hurriedly started the truck and tried to drive away. The boys jumped out, and while holding onto the truck shattered two of its windows before some nearby police arrived. After being told by the boys that Johnson had tried to have sexual contact with them, the police arrested Johnson and ultimately charged him with solicitation, two counts of battery, and drunk driving. A plea bargain was arranged in which the charges were consolidated and reduced. Under the agreement, Johnson pled guilty to solicitation and to inattentive driving.

On March 21, 1989, Johnson, represented by counsel [1], was arraigned and advised by the court that conviction for the crime of solicitation was punishable by incarceration for up to thirty months. Johnson entered his guilty plea on that date. A presentence investigation was ordered and ultimately filed on April 27, 1989. The report recommended incarceration and evaluation.

On April 6, 1989, the state, realizing that an error had been made, moved the court to re-advise Johnson that the maximum penalty for soliciting the infamous crime against nature was fifteen years and asserted that Johnson should be required to re-enter his plea. Johnson, represented by new counsel, moved for a continuance on May 2, 1989, and notified the court that he would move to withdraw his guilty plea. A hearing was set to hear arguments on the question of the maximum penalty for soliciting the infamous crime against nature. At that time, the district judge stated that "at that time if in fact I determine [the penalty] to be greater than the 30 months, Mr. Johnson will be given an opportunity to enter a new plea on the charge."

After pleading guilty, Johnson received information which he thought supported his belief, as yet unarticulated to the court, that he was innocent. He persuaded the police to investigate. Johnson also requested that the prosecutor furnish any new information it had in its possession. On May 5, 1989, the prosecutor produced a supplemental response to discovery containing a police report dated May 2, 1989. On May 8, 1989, the prosecutor supplied Johnson with another police report, dated February 15, 1989, containing previously unreleased information. Johnson contends that both reports contain exculpatory and material information.

On May 9, 1989, a hearing was held on the prosecution's motion to re-advise Johnson of the maximum penalty for the solici-

---

1. We note that Johnson changed counsel after entering his plea, continuing with his second attorney through the remainder of the proceedings, including this appeal.

tation charge. At that time, the state withdrew its motion and Johnson again notified the court that he intended to move to withdraw his plea. At the hearing, the court ruled that it would be bound by the "law of the case" as established at the arraignment, and that the law of the case in this instance indicated that the maximum penalty for solicitation was thirty months.

On May 16, 1989, Johnson moved to withdraw his plea. The district court denied the motion and issued an opinion holding that the information in the police reports was not exculpatory or material. Further, the court found that the unproduced information did not negate any elements of the charged crime, and that Johnson's plea was entered knowingly and voluntarily.

### Standard of Review

 When a defendant seeks to withdraw a guilty plea before sentencing, the court is to exercise liberal discretion, and the defendant need only present a just reason to withdraw his plea. *State v. Hocker*, 115 Idaho 137, 139, 765 P.2d 162, 164 (1988). When such a reason is presented, relief will be granted absent a strong showing of prejudice by the state. *Id.* However, when a motion to withdraw a guilty plea is made before sentencing but after the movant has read his presentence report or received other information about his probable sentence, the court is to exercise broad discretion, but may temper its liberality by weighing the defendant's apparent motive. *Id.* Appellate review of the denial of a motion to withdraw a guilty plea is limited to an evaluation of whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *State v. Simons*, 112 Idaho 254, 256, 731 P.2d 797, 799 (Ct.App.1987). This Court will look to the entire record to determine whether it is manifestly unjust to preclude the defendant from withdrawing his plea. *Id.*

### The Police Reports and the Exculpatory Information

#### A. The Reports were Requested but not Produced

First, we will discuss the belatedly produced police reports and the information contained in them. Johnson claims that information in both reports was exculpatory and material and that the state breached its duty of production and acted unfairly when it failed to produce the reports until after he entered his plea and then only after he notified the state of his intention to withdraw it.

 Due process requires that the accused be informed of exculpatory evidence in the prosecutor's possession. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Simons, supra.* Furthermore, the state has a duty to provide all exculpatory or possibly exculpatory material, whether requested or not. *Simons, supra. See also* I.C.R. 16(a). "There are situations in which evidence is obviously of such substantial nature to the defense that elementary fairness requires it to be disclosed even without specific request." *Simons*, 112 Idaho at 257, 731 P.2d at 800. Exculpatory evidence has been defined as evidence which tends to clear an accused of alleged guilt, excuses the actions of the accused, or tends to reduce punishment. *Gibson v. State*, 110 Idaho 631, 718 P.2d 283 (1986); *Schwartzmiller v. Winters*, 99 Idaho 18, 576 P.2d 1052 (1978); *Simons, supra.* Information that can be used to impeach or show bias may also be required to be produced. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Schwartzmiller, supra.*

 The state is not compelled to volunteer *all* information which may assist the defense in preparing for trial. *State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980); *Simons, supra.* However, it is the prosecutor's duty to make available all evidence which tends to aid in ascertaining the truth. *Simons, supra.* To that end, the prosecution has a continuing duty to disclose newly-discovered evidence. *Schwartzmiller, supra.* Exculpatory evidence that is material must be produced. *State v. Leatherwood*, 104 Idaho 100, 656 P.2d 760 (Ct.App.

1982); *Simons, supra.* Evidence is material only if, viewed in relation to all competent evidence, it appears to raise a reasonable doubt concerning the defendant's guilt. *Leatherwood, supra; Simons, supra.* Put differently, the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. *Bagley, supra; Simons, supra.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Simons, supra.* Failure to disclose exculpatory and material evidence is a denial of due process irrespective of the good or bad faith of the prosecutor and requires reversal of the conviction. *Id.* Normally, a guilty plea ends the prosecutor's duty to disclose. *State v. Schmidt*, 103 Idaho 340, 647 P.2d 796 (1982); *Simons, supra.*

When Johnson's counsel made his original discovery request on December 23, 1988, he requested, among other things, police reports and memoranda of investigations made in connection with this case. The request was made again on January 19, 1989.

The report dated May 2, 1989, was given to Johnson on May 5. The report contained information that E.B., an alleged victim, had told friends that Johnson had made a pass at him in the bathroom and that he was going to Johnson's truck to beat him up and rob him. Also within the report was information that E.B. had told a teacher and his classmates at school that Johnson did not touch E.B. in the bathroom of the bowling alley and that twenty dollars was not shown, but a "wad of money" was. As stated in the report, E.B. told his schoolmates that while he was in Johnson's truck, Johnson did not touch his penis or that of his friend, but instead put his hand on the leg of one of the boys and around the shoulders of the other.

The other report dated February 15, 1989, was given to Johnson on May 8, 1989. This report contains information that the alleged victims were going to get into Johnson's car, beat him up and rob him.

Johnson argues that the information in the two police reports negate elements of the crime charged and tends "to negate the gravity of punishment" because of indication that Johnson was not being predatory. Therefore, Johnson contends, the information in both reports is exculpatory and material.

It is clear that the state did not comply with Johnson's discovery request for the police reports. The reports were not produced until May 5 and May 8, 1989. Johnson pled guilty on March 21, 1989, and indicated his intent to withdraw his plea on May 2, 1989. The question now is whether the state was obliged to comply with the request considering the nature of the information in the reports.

### B. The Information was Exculpatory and Material

■ Johnson was charged with solicitation of the infamous crime against nature. A person is guilty of soliciting a crime

> if with the purpose of promoting or facilitating [the crime's] commission he solicits, importunes, commands, encourages, or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish complicity in its commission.

I.C. § 18–2001. The infamous crime against nature has been defined to include unnatural carnal copulations committed *per os* or *per anum*. *State v. Altwatter*, 29 Idaho 107, 157 P. 256 (1916).

The district court stated that

> The 'undisclosed' evidence relates to the motive of the minors in approaching Johnson's automobile. The evidence does not tend to clear Johnson of the alleged charges. Allegations that the minor victims may have intended to rob Johnson rather than have sex with him are irrelevant to the inquiry in this case. The proper focus of the Court and jury would be on Johnson's actions and intentions and not on those of the victims. The unlikeliness of actual criminal success has no bearing on a charge of criminal solicitation of the infamous crime against nature.

When instructing Johnson on what the state would have to prove to convict him, the court asked Johnson if he understood that a guilty plea would be considered an admission of the truth of the charges. He answered, "Yes, sir." The court then stated that

> Specifically it is ·charged that you did that [solicited the infamous crime against nature] by touching this person whose initials are E.B. on the genitals and offering money in exchange for sexual acts. Do you understand the specific things the state would have to prove?

Johnson replied, "Yes, sir."

We agree with Johnson that the information in the police reports may tend to negate the specific items described by the court, that is, that Johnson touched E.B. on the genitals. Though we question the court's statement that the state would have to prove solicitation in part by establishing that Johnson touched E.B. on the genitals, it was what Johnson was told. At the very least, the information in the reports is inconsistent with the earlier statements made to the police by E.B. and the second victim, and may have been used to impeach their testimony or show a bias they may have held against Johnson.

We find this case to be factually similar to *Simons, supra,* in which the defendant, in a plea agreement, pled guilty to involuntary manslaughter based on her allegedly unwitting act of dragging her lover to death with her car. After sentencing, she moved to withdraw her plea, based on the grounds that her jailer had not produced exculpatory and material information about the defendant's physical and mental condition after the incident. The defendant asserted that this information would have given her a stronger case in her defense to the original charge of second degree murder and she would not have pled guilty to the lesser offense of involuntary manslaughter had she had the information. She sought to withdraw her plea on the basis that it was not knowingly or voluntarily entered due to the prosecution's failure to produce the information. Alternatively, she argued that the unavailability of the information resulted in ineffective assistance of counsel.

The Court found that the information held by the jailer was exculpatory in that it may have been used as a defense or to mitigate the charge of second degree murder. Additionally, the Court found that an awareness of the jailer's knowledge might have led defense counsel to other evidence. However, the Court found the evidence was not material because the defendant already personally knew of the circumstances surrounding her lover's death. Also, the defendant's counsel had access to the reports of physicians who examined the defendant after her initial incarceration. As the state points out in its brief, Johnson's case is similar to *Simons* in that Johnson personally knew of the circumstances surrounding the incident at the Cove Bowl. Several police reports were disclosed to the defense. Further, when questioned by the court to determine whether his plea was being entered knowingly, voluntarily and intelligently, as required in I.C.R. 11(c), Johnson admitted the acts with which he was charged in the information. However, after entering his plea, Johnson denied the acts. He said he had been personally threatened by E.B.'s mother, and had pled guilty on the advice of counsel, even though Johnson denied his guilt, in order to get the conflict over quickly and to try to save his family and his business. Also, Johnson's arrest had generated considerable local newspaper coverage. Johnson asserts that he pled guilty in part because he felt that he already had been convicted in the press and that nobody would believe his claim of innocence.

■ Though factually similar, there exists a significant difference between *Simons* and the instant case. In *Simons,* defense counsel had not used the knowledge of the jailer's observations, which he learned of during the sentencing hearing, to seek a continuance to move to withdraw the plea before sentence was pronounced. Instead, he attempted to use the information in mitigation at the sentencing hearing. The Court noted the stricter test ap-

plicable to motions to withdraw a plea after sentencing—the manifest injustice standard—and found that the lower court had not abused its discretion in denying the motion. In the present case, however, Johnson moved to withdraw his guilty plea before sentencing, so the lesser "just reason" standard for withdrawal of the plea applies, and the judge was to exercise liberal discretion when evaluating the motion.

### Motivation for Withdrawing the Plea

■ The judge's discretion was to be tempered by Johnson's motive for withdrawing his plea. To properly review the judge's exercise of discretion, we must determine whether his conclusion regarding Johnson's apparent motive was sound.

The court below determined that Johnson's motive was to avoid an unfavorable presentence report. Johnson had seen the report before he moved to withdraw his plea. The report was released on April 27, 1989, and Johnson notified the court on May 2 of his intent to move for a change of plea. Also, there is evidence to suggest that on April 27 Johnson learned of a sentence, which included incarceration, imposed on one of his son's friends for a sex-crime conviction. Johnson "concedes that the first PSI was unfavorable because it recommended incarceration and retained jurisdiction in a sex offender's program." However, he argues that the report was unfavorable because the investigator did not have the benefit of all of the police reports and had not interviewed the alleged victims before preparing the report. The district court agreed with Johnson, noted the error, and ordered a supplemental presentence investigation and report.

We find the court's conclusion that Johnson was seeking a jury trial only to avoid an unfavorable presentence report to be erroneous in that it appears to be inherently contradictory. According to the district court, the presentence report that Johnson sought to avoid was in fact improperly prepared. The investigator had not talked to the alleged victims and had not been able to read the unproduced police reports. After reading the report and interviewing the alleged victims, the investigator changed the report. The corrected report differed from the first essentially in that it did not object to supervised probation without retained jurisdiction. We find the court's position on this issue contradictory in that it essentially sought to avoid the first presentence report, as did Johnson, when it found the first report to be improperly prepared and ordered that the second be completed.

### Johnson was Wrongly Advised of the Possible Sentence

Another factor weighing in Johnson's favor is that he was wrongly advised of the maximum penalty for his alleged crime. The judge originally assigned to this case, Judge Prather, had advised Johnson that he could be sentenced for up to thirty months' incarceration, while actually the statutory penalty could extend to fifteen years' incarceration. Acknowledging the error, Judge Judd, the second judge to be involved, bound the parties to the thirty-month maximum. However, Judge Prather previously had stated that if the court found Johnson was wrongly advised, he would be allowed to withdraw his plea. Fairness dictates that Johnson should have been allowed to withdraw his plea in light of the true maximum punishment. Fairness also dictates that the court should have abided by its statement to allow Johnson to withdraw his plea.

### No Prejudice to State

■ At one point in the proceeding, the court asked the state whether it would be prejudiced if Johnson were allowed to withdraw his plea and the matter were to go to trial. The state answered that it "can't in good faith say we are prejudiced in presenting our case if it comes to that." Even though a finding of prejudice is not necessary for rejection of a motion to withdraw a plea, we find that in this case the lack of prejudice weighs in favor of allowing the plea to be withdrawn. *See State v. Ballard*, 114 Idaho 799, 801–02, 761 P.2d 1151, 1153–54 n. 2 (1988).

Johnson has presented two other arguments to support his claim of error. First,

he asserts that the state's failure to produce the two police reports rendered the assistance of his counsel ineffective. Second, he argues that because he did not know of the information in the reports, he did not enter his plea knowingly, voluntarily or intelligently. Based on our conclusion that other grounds for withdrawal of the plea support reversal, we decline to address Johnson's final two arguments.

### Conclusion

We hold that the cumulative effect of the errors made in the proceedings below warrant allowing Johnson to withdraw his guilty plea. Johnson was not provided with police reports which he had requested. Even without the requests, the state had a continuing duty to provide the reports because they were exculpatory and material. Further, Johnson had been wrongly advised of the maximum possible penalty for the charged crime, an error which the court stated it would redress by allowing Johnson to withdraw his plea. Also, the court erred in determining Johnson's motivation in withdrawing his plea. Finally, there would have been no prejudice to the state had the court allowed Johnson to withdraw his guilty plea and the matter gone to trial. "Before sentencing, the inconvenience to the court and prosecution resulting from a change of plea is ordinarily slight as compared to protecting the right of the accused to trial by jury." *State v. Jackson,* 96 Idaho 584, 588, 532 P.2d 926, 930 (1975), *quoting Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963). Therefore, we conclude that Johnson has presented a just reason for withdrawing his guilty plea, and that the district court did not properly exercise its discretion when it denied Johnson's motion. Consequently, we reverse the order denying the motion. The judgment of conviction is vacated and the case is remanded with direction to allow Johnson to withdraw his plea of guilty.

SWANSTROM and SILAK, JJ., concur.