885 P.2d 1144

STATE of Idaho, Plaintiff–Respondent,

v.

Danny John GARDNER, Defendant–Appellant.

No. 21015.

Court of Appeals of·Idaho.

Nov. 21, 1994.

Whittier, McDougall, Souza, Murray & Clark, Chartered, Pocatello, for appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

In this appeal we must determine whether the defendant, who pleaded guilty to vehicular manslaughter, should have been allowed to withdraw his guilty plea after sentence was imposed because the prosecution did not disclose material, exculpatory evidence prior to entry of the guilty plea. We hold that,

under the unique circumstances of this case, the defendant was entitled to withdraw the plea.

## I.

## BACKGROUND

Danny John Gardner was charged with vehicular manslaughter, I.C. §§ 18–4006(3)(a), (b), as a result of an automobile collision on May 31, 1993. Gardner was driving on U.S. highway 91 when his vehicle crossed the center line and struck a pickup truck traveling in the opposite direction. The driver of the pickup died as result of injuries sustained in the collision. Three other passengers in the pickup were seriously injured. Gardner and a passenger in his vehicle, his nephew, also suffered injuries requiring hospitalization.

The Idaho State Police (ISP) investigated the accident. Urine samples collected from Gardner at the hospital tested positive for marijuana, as did a pipe recovered by the ISP from Gardner's automobile. A few days after the accident Gardner's nephew was interviewed by an ISP officer. The nephew, a child,[1] said that Gardner had just lit the pipe, taken two deep breaths and "kind of slumped over the steering wheel" immediately prior to the accident.

On August 2, 1993, a complaint was filed charging Gardner with vehicular manslaughter. Attached to the complaint were the ISP accident report, an ISP report relating the interview of the nephew; an incident report filed by the ISP officer who responded to the accident; and toxicology records indicating that the urine samples taken from Gardner had tested positive for cannabinoids.

An attorney was appointed to represent Gardner. On September 20, 1993, Gardner entered a plea of guilty. At that hearing Gardner acknowledged that he had been using marijuana before the accident. He also stated that he could not remember anything about the accident and believed that he might have fallen asleep while driving because he had not slept during the preceding night. The district court accepted Gardner's guilty plea and ordered a presentence investigation report. On November 22, 1993, Gardner was given a unified sentence of ten years with a four-year minimum term.

Shortly thereafter, Gardner's attorney learned that a witness to the accident, who had been driving directly behind Gardner's vehicle, believed that the left-front tire of Gardner's automobile blew out immediately before the vehicle crossed the center line and collided with the oncoming pickup.[2] Gardner's attorney obtained this information from a lawyer involved in a civil lawsuit arising out of the collision. Gardner's attorney discovered that this eyewitness had given a written statement to the ISP on the day of the accident which stated that, "when the blue car [Gardner's vehicle] was about ten feet in front of the truck I believe the driver('s) front tire blew. The whole [sic] jumped into the oncoming lane like it was on rails." When his deposition was taken in the civil action this witness further explained that he observed the left-front tire blowing out. He saw a puff of dust and rock chunks that appeared to have been caused by the tire blowing, and then the car immediately jerked to the left.[3]

On December 13, 1993, Gardner moved to withdraw his guilty plea on grounds that the ISP had in its possession a material and exculpatory statement by the witness and had failed to disclose this information to the defense. Gardner reasoned that this evidence was exculpatory because it showed that the collision was actually caused by a tire blowout, not by the fact that Gardner was to some degree under the influence of marijuana when the collision occurred.

At the hearing on Gardner's motion the prosecutor acknowledged that the ISP had

---

1. The record is unclear as to the nephew's age. He is referred to variously as nine years old and as thirteen years old.

2. This witness's name and address was listed on the ISP accident report, which was attached to the complaint.

3. A transcript of the witness's deposition testimony was submitted to the district court in support of Gardner's motion to withdraw his plea.

possessed the witness's statement but failed to reveal its existence either to the prosecutor's office or to counsel for the defense. The prosecutor stated that this was a divergence from the ISP's routine practice of sending the prosecutor copies of all witness statements. The ISP reportedly attributed the omission to "stenographic error."

The district court denied leave for withdrawal of Gardner's guilty plea and also denied his alternative request for reduction of his sentence. Gardner brings this appeal from the denial of both of these alternative requests for relief.

## II.

## ANALYSIS

■ Gardner contends that his guilty plea was constitutionally infirm because it was entered in ignorance of material, exculpatory evidence possessed by the State. A motion to withdraw a plea of guilty is governed in part by I.C.R. 33(c), which provides that a court may set aside a guilty plea after sentencing to correct manifest injustice.[4] See State v. Gomez, 124 Idaho 177, 857 P.2d 656 (1993); State v. Carrasco, 117 Idaho 295, 298, 787 P.2d 281, 284 (1990). A motion to withdraw a guilty plea under I.C.R. 33(c) is committed to the trial court's discretion. On appeal our review is directed to determining whether the trial court abused its discretion in denying the motion. Carrasco, 117 Idaho at 298, 787 P.2d at 284; State v. Hawkins, 117 Idaho 285, 289, 787 P.2d 271, 275 (1990). Where a guilty plea is shown to be constitutionally invalid, however, leave to withdraw the plea is constitutionally mandated. Therefore, we have held that a constitutional violation that would invalidate the guilty plea

is a manifest injustice as a matter of law for purposes of withdrawal of a guilty plea under Rule 33(c). State v. Detweiler, 115 Idaho 443, 446, 767 P.2d 286, 289 (Ct.App.1989).

■ The United States Supreme Court, in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), established that a prosecutor has a duty to disclose to an accused any material, exculpatory evidence in the prosecutor's possession, the failure of which duty is a violation of the accused person's right to due process. The Court stated, "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. at 1196–1197. Subsequent decisions establish that this prosecutorial obligation of disclosure exists whether the accused has made a request precisely for the material that was withheld, a general request, or no request at all. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); United States v. Agurs, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). ("[T]here are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request.")

In tandem with this constitutional obligation stemming from the due process clause, the Idaho Criminal Rules require the prosecuting attorney to disclose "as soon as practicable following the filing of charges," any evidence which "tends to negate the guilt of the accused as to the offense charged or which would tend to reduce the punishment." I.C.R. 16(a).[5]

---

4. I.C.R. 33(c) states:

A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw defendant's plea.

5. I.C.R. 16(a) provides:

Automatic disclosure of evidence and material by the prosecution. As soon as practicable following the filing of charges against the ac-

cused, the prosecuting attorney shall disclose to defense counsel any material or information within the prosecuting attorney's possession or control, or which thereafter comes into the prosecuting attorney's possession or control, which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce the punishment therefor. The prosecuting attorney's obligations under this paragraph extend to material and information in the possession or control of members of prosecuting attorney's staff and of any others who have participated in the investigation or evaluation of the case who either regularly report,

■ At the outset, we observe that the undisclosed evidence in Gardner's case was exculpatory in nature. Evidence is exculpatory if it "tends to clear an accused of alleged guilt, excuses the actions of the accused, or tends to reduce punishment." *State v. Johnson*, 120 Idaho 408, 411, 816 P.2d 364, 367 (Ct.App.1991). *See also Gibson v. State*, 110 Idaho 631, 633, 718 P.2d 283, 285 (1986). As explained more thoroughly in our discussion of the establishment of factual guilt, *infra*, Gardner could be guilty of vehicular manslaughter only if his driving under the influence or other unlawful act was the cause of the victim's death. The eyewitness's account of his observations was exculpatory because it tended to show that the collision, and ultimately the victim's death, was caused by a tire blowout, not by the fact that Gardner was driving while fatigued or under the influence of a drug. Therefore, the prosecution's obligation to disclose exculpatory evidence applied to this witness's statement.

■ The State argues that there could not have been a violation of the prosecutor's obligation under *Brady v. Maryland* because the prosecutor here was as ignorant as defense counsel of the undisclosed witness's statement. We cannot accept this position. First, we think the duty of disclosure enunciated in *Brady* is an obligation of not just the individual prosecutor assigned to the case, but of all the government agents having a significant role in investigating and prosecuting the offense. *See Fambo v. Smith*, 433 F.Supp. 590, 598 (W.D.N.Y.1977), *aff'd*, 565 F.2d 233 (2d Cir.1977). Moreover, I.C.R.

16(a) specifies that the prosecution's duty of automatic disclosure under that rule extends to exculpatory evidence and information in the possession or control of the prosecuting attorney's staff and of "any others who have participated in the investigation or evaluation of the case who either regularly report, or with reference to the particular case have reported, to the office of the prosecuting attorney." Thus, the individual prosecutor's innocence does not obviate the violation.

■ The State also contends that a defendant is entitled to assert a *Brady* violation only if the defendant's conviction followed a trial and not if the defendant pleaded guilty. This argument is misplaced, for this Court has previously held that grounds for withdrawal of a guilty plea were shown where material, exculpatory evidence known to the State had been withheld from the defendant. *State v. Johnson*, 120 Idaho 408, 816 P.2d 364 (Ct.App.1991).[6] Although the United States Supreme Court's decisions have articulated the prosecutor's disclosure obligation as one essential to ensure a fair trial, *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–1197; *Agurs*, 427 U.S. at 108, 96 S.Ct. at 2399–2400, the underlying policy expressed by these opinions—to uncover truth and ensure that only the guilty are convicted—applies as well where a guilty plea was entered in ignorance of material, exculpatory information possessed by the prosecution. In *Bagley*, the Supreme Court observed that the purpose of the *Brady* rule is "to ensure that a miscarriage of justice does not occur,"

or with reference to the particular case have reported, to the office of the prosecuting attorney.

6. Idaho courts have sometimes said that a guilty plea waives all nonjurisdictional defects and defenses, including constitutional violations in prior proceedings. *See, e.g., Clark v. State*, 92 Idaho 827, 832–33, 452 P.2d 54, 59–61 (1969); *Schmidt v. State*, 103 Idaho 340, 346–47, 647 P.2d 796, 802–03 (Ct.App.1982). However, in *Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975), the United States Supreme Court said its prior decisions disallowing withdrawal of guilty pleas for preplea constitutional violations do not "stand for the proposition that counseled guilty pleas inevitably 'waive' all antecedent constitutional violations.... [I]n *Tollett [v. Henderson*, 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973)] we

emphasized that waiver was not the basic argument in this line of cases...." In *Menna* the Court held that the defendant who had pleaded guilty could nonetheless appeal on grounds that he had been subjected to double jeopardy. Of course, a voluntary and intelligent guilty plea *does* inherently waive many rights which otherwise could have been asserted in the trial process, including the privilege against self-incrimination, the right to a jury trial, the right to confront one's accusers, and the right to challenge the admissibility of evidence upon which the State might have relied at trial. However, in light of *Menna*, our past statements that a guilty plea inherently waives *all* nonjurisdictional defects and defenses are overbroad. To the extent that *Schmidt v. State* is inconsistent with our decision in *State v. Johnson*, we elect to follow our more recent ruling in *Johnson*.

*Bagley,* 473 U.S. at 675, 105 S.Ct. at 3379–3380, and in *Agurs,* the Court stated:

> [T]hough the attorney for the sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that "justice shall be done." He is the "servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer."

*Agurs,* 427 U.S. at 110–11, 96 S.Ct. at 2401, quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). As to the risk of conviction of the innocent by guilty pleas, the Supreme Court has stated, "This mode of conviction is no more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial." *Brady v. United States,* 397 U.S. 742, 758, 90 S.Ct. 1463, 1474, 25 L.Ed.2d 747 (1970).[7] In light of these pronouncements of the Supreme Court, we see no reason to depart from our decision in *Johnson,* which allows relief for violations of the prosecutorial obligation of disclosure in appropriate circumstances where the conviction was entered upon a guilty plea.

 The validity of a guilty plea is determined by reference to whether it was voluntary, knowing and intelligent. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Brady v. United States,* 397 U.S. at 748, 90 S.Ct. at 1468–1469; *Carrasco,* 117 Idaho at 298, 787 P.2d at 284; *State v. Rose,* 122 Idaho 555, 558, 835 P.2d 1366, 1369. This entails an inquiry as to whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront adverse witnesses and to refrain from self-incrimination; and whether the defendant understood the consequences of pleading guilty. *Carrasco,* 117 Idaho at 298, 787 P.2d at 284. Thus, to satisfy constitutional standards, a guilty plea must not only be voluntary but must be "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. at 748, 90 S.Ct. at 1469. It also must not be a product of "misrepresentation or other impermissible conduct by state agents." *Id.,* 397 U.S. at 757, 90 S.Ct. at 1473. Where misconduct by the state keeps a defendant and his attorney unaware of circumstances tending to negate the defendant's guilt or to reduce his culpability, a guilty plea entered in ignorance of those facts may not be knowing and intelligent though it is otherwise voluntary. Accordingly, a *Brady v. Maryland* violation may warrant setting aside a guilty plea where the violation calls into question the accuracy of the adjudication of guilt.

In *Campbell v. Marshall,* 769 F.2d 314 (6th Cir.1985), *cert. denied sub nom. Campbell v. Morris,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986), the Sixth Circuit Court of Appeals presented a helpful analysis of the circumstances under which relief from a guilty plea should be permitted as a result of a *Brady* violation. In that case, the defendant pleaded guilty to aggravated murder for shooting his wife and her companion, a man named Franket. At the plea proceeding, Campbell stated that he shot Franket "because he was with my wife," and that he shot his wife "because she was with him." Campbell subsequently learned that the police had found a pistol on Franket's body. Campbell petitioned for habeas corpus relief, alleging a *Brady* violation. He contended that he would have gone to a jury with a self-defense claim if he had known of the gun. In considering Campbell's claim, the Sixth Circuit first concluded that "the Supreme Court did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes constitutional muster as knowing and intelligent." *Campbell,* 769 F.2d at 321. The court then opined that a challenge to a guilty plea based on a *Brady* violation should be evaluated in light of all the attendant circumstances, including the following three factors: (1) whether the

---

**7.** Not to be confused with *Brady v. Maryland* which is cited and discussed at length elsewhere in this opinion and to which we refer as *"Brady."*

plea was entered with advice of counsel, (2) whether the plea-taking procedure complied with *Boykin v. Alabama*, and (3) whether a factual basis was established for the plea, i.e., whether the defendant's admissions fully establish his factual guilt. *Id.* at 321, 323–24. The satisfaction of these criteria, the court said, "must go a long way toward protecting the plea-taking event from later collateral attack." *Campbell*, 769 F.2d at 324.

The court found each of those elements satisfied in Campbell's case because he had received advice of counsel, the plea-taking procedure complied with *Boykin*, and Campbell's own statements at the time of the plea established that he was in fact guilty and did not act in self-defense. Therefore, although knowledge of the victim's possession of the gun would have affected Campbell's plea negotiating position and his evaluation of the likelihood of success at trial, "the constitutional wrong, if such it was, did not compromise either the truth or the voluntary and knowing nature of the plea." *Id.* at 324.

In *White v. United States*, 858 F.2d 416 (8th Cir.1988), the Eighth Circuit adopted the *Campbell* analytical approach and considered the three factors that *Campbell* identified as significant in evaluating the validity of the plea. The court in *White* added to those three factors an examination of the extent to which the withheld evidence affected the plea decision, including consideration of benefits received by the defendant in exchange for the guilty plea. *White*, 858 F.2d at 422–24.

■ We will follow the same analytical framework, applying the factors identified in *Campbell* and *White* to evaluate Gardner's challenge to his guilty plea. Two of the *Campbell* elements, the advice of competent counsel and the propriety of the plea-taking procedure, are not questioned here. The remaining elements will be separately considered.

**A. Establishment of Factual Guilt**

■ In the vast majority of cases, when defendants plead guilty they know full well whether they in fact committed the offense. If information withheld by the State relates to a fact that was within the defendant's knowledge and that he admitted when the plea was entered, the discovery of a *Brady* violation ought not enable the defendant to contest that which he has already openly admitted. In such circumstances, a violation of the prosecution's obligation of disclosure does not compromise the truth or risk conviction of the innocent. Therefore, it is essential to determine whether the defendant's admissions at the plea hearing fully established his factual guilt.

■ Unlike the defendant in *Campbell*, Gardner did not admit all elements of the offense charged. He acknowledged he was under the influence of marijuana at the time of the accident, and this admission is sufficient to establish that he violated I.C. § 18–8004 by driving under the influence of drugs, but that is not the offense with which he was charged or to which he pleaded guilty. The vehicular manslaughter charge against Gardner required the further element that the defendant's operation of the motor vehicle caused the death of another *because of* the defendant's driving in an unlawful manner. I.C. § 18–4006(3)(a), (b).[8] In other words, he was guilty of vehicular manslaughter only if his being under the influence of marijuana or his commission of some other unlawful act with gross negligence was the cause of the collision.

Gardner did not admit to facts establishing the causation element. As to how the collision occurred, Gardner could only state, "I don't really remember nothing about that accident. I could have fell asleep. I think that's maybe what it was. I never had no sleep the night before." Gardner's disclaimer of knowledge as to why and how the accident occurred does not lack credibility.

---

8. I.C. § 18–4006 reads as follows:
Manslaughter is the unlawful killing of a human being, without malice. It is of three (3) kinds:
....
3. Vehicular—in which the operation of a motor vehicle causes death because of:

(a) the commission of an unlawful act, not amounting to a felony, with gross negligence; or
(b) the commission of a violation of section 18–8004 or 18–8006, Idaho Code;
....

The moments immediately preceding a violent accident are often not recalled by those who are injured, and the accident's cause is often unknown to them. Even a driver with a clear recollection might not know how or why a loss of control of a vehicle occurred. We conclude that Gardner's statements at the plea hearing do not establish his factual guilt of vehicular manslaughter and are not inconsistent with his present assertion that the undisclosed witness's statement negates the causation element of the crime.

**B. Effect of Undisclosed Material on Plea Decision**

 The inquiry into the effect of the undisclosed evidence on the plea decision as discussed in *White* is essentially the same as an assessment of the materiality of the evidence. The *Brady* principle is violated only if the evidence withheld by the state is both exculpatory and material. *Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Agurs,* 427 U.S. at 107–113, 96 S.Ct. at 2399–2402; *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–1197. "Materiality" for purposes of evaluating a claimed *Brady* violation is defined in *Bagley:*

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence·in the outcome.

*Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

 On a *Brady* challenge to a guilty plea, the test of materiality is whether there is a reasonable probability that, but for the state's failure to produce the information, the defendant would not have entered the plea but instead would have insisted on going to trial.[9] *Miller v. Angliker,* 848 F.2d 1312, 1322 (2d Cir.1988). This is not a subjective investigation into what the particular defendant and his counsel actually would have decided, but an objective assessment, based in part upon the persuasiveness of the with-

held information. *Id. See also Hill v. Lockhart,* 474 U.S. at 59–60, 106 S.Ct. at 370–371.

 The eyewitness's statement that was withheld from Gardner suggests that the cause of the accident may have been a blowout of the left front tire of the vehicle. In his deposition the witness held steadfastly to his perception that the tire had blown immediately before Gardner's automobile left its lane of travel. He described in detail the appearance of an explosion that blew dust and rocks on the highway surface, and the witness stated that his observation was sufficient to prompt him to look at the tire after the accident. He found that the tire was indeed flat. Further, at the hearing on Gardner's motion to withdraw, the prosecutor acknowledged that the tire was flat after the accident, though he stated that the State's experts were of the opinion that the tire blew out upon the impact with the other vehicle.

There was other evidence contradicting the eyewitness's account of the likely immediate cause of the accident. Gardner's nephew said that Gardner had slumped over the wheel just before the accident. The reliability of the latter information would have been subject to attack at trial, however, because the nephew was a child and was himself injured in the collision, making the accuracy of his perception and memory subject to question.

Under the circumstances, the eyewitness's information appears to have sufficient evidentiary value to convince a reasonable defendant in Gardner's position that an acquittal (or a conviction only for the lesser offense of driving under the influence) was a realistic possibility which ought not be foreclosed by a guilty plea, absent any countervailing considerations favoring the plea.

 In determining the probable effect of the undisclosed information on the plea decision, however, we must consider not only the potential exculpatory value of the evidence but also whether the defendant had

---

9. This test parallels the test for prejudice in an ineffectiveness of counsel claim following a plea of guilty where a defendant must show, "that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

motivations for pleading guilty that are apparent from the record other than the weight of the evidence against him. Any benefit derived by the defendant from the guilty plea is a significant factor inasmuch as a plea may be heavily motivated by reduction of exposure to additional charges and criminal penalties. This consideration is quite independent of the weight of the evidence on the charge to which the guilty plea was entered.

In the case before us, there is no indication in the record that Gardner derived any benefit from his decision to plead guilty other than avoidance of the stress of trial. There was no plea agreement by which the prosecutor made any concession in exchange for Gardner's guilty plea. No offenses other than vehicular manslaughter were charged or contemplated, and the prosecutor did not agree to limit his sentencing recommendation in exchange for the plea.

In view of the relative evidentiary value of the information withheld from Gardner and the absence of motivations for his guilty plea other than the apparent weight of the evidence against him, we deem it reasonably probable that, if the exculpatory eyewitness's statement had been revealed to Gardner, he would have elected not to plead guilty.

Under the circumstances presented here, where the undisclosed evidence was exculpatory and material, where the defendant's admissions upon pleading guilty did not factually establish his guilt of the charged offense, and where the defendant derived no benefit from the guilty plea, we conclude that a violation of the defendant's rights under *Brady v. Maryland* has been demonstrated, and leave to withdraw the guilty plea should have been granted. Gardner is entitled to have a jury of his peers make the determination of his guilt or innocence.

In light of our determination that Gardner must be allowed to withdraw his guilty plea, we need not address his alternative argument on appeal that the district court abused its sentencing discretion in imposing an indeterminate ten-year sentence with a minimum four-year term.

The district court's order denying the appellant's motion to withdraw his guilty plea is reversed, and the case is remanded for further proceedings.

WALTERS, C.J., and PERRY, J., concur.