**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40924**

| | | |
|---|---|---|
| **MARC EDWARD KLEIN,** | ) | **2014 Opinion No. 50** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: July 2, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Joel E. Tingey, District Judge.

Summary dismissal of two claims for post-conviction relief, <u>affirmed</u>; judgment denying remaining post-conviction claim, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, Boise, for appellant; Jeffrey Brownson, argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

---

WALTERS, Judge Pro Tem

Marc Edward Klein appeals from the summary dismissal of two of his claims for post-conviction relief and the judgment denying his other claim following an evidentiary hearing. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In November 2011, Klein's vehicle struck another vehicle nearly head on. The crash resulted in the death of the other driver. Klein had a blood alcohol concentration of .279. At the crash scene, Klein made incriminating statements such as he "really screwed up this time."[1] There were no witnesses to the accident. Klein later claimed to have no memory of the accident.

---

[1]     Klein also asked a motorist who stopped to help "if he was the person he'd hit." Later, he told a dispatcher that "he had killed someone."

1

The State subsequently charged Klein with vehicular manslaughter and driving under the influence (excessive). An Idaho State Police trooper prepared an accident report that concluded Klein had crossed the centerline resulting in the collision. The trooper testified at the preliminary hearing and the report was later reviewed and approved by Idaho State Police MCpl. Fred Rice. Thereafter, MCpl. Rice prepared his own accident report.

In exchange for Klein's guilty plea to vehicular manslaughter, the State agreed to recommend six years with three years determinate and dismiss the DUI charge. Klein entered an *Alford* plea,[2] and the judgment of conviction was entered on April 22, 2011. Klein did not appeal. Before Klein's judgment became final, the Idaho Supreme Court filed its opinion in *State v. Ellington*, 151 Idaho 53, 253 P.3d 727 (2011). Relevant to this case, the Court made numerous statements regarding MCpl. Rice's "false testimony" during Ellington's trial. *Id.* at 56, 253 P.3d 730. At Ellington's trial, an accident reconstruction expert testified on behalf of the defense that an average perception-reaction time is 1.5 seconds and that debris can be used to determine the point of impact. MCpl. Rice testified in rebuttal that there is no average perception-reaction time in the world. He further testified that using debris to place the impact location at the scene is unreliable because debris can be kicked around and due to the spray of debris after a collision. After Ellington's trial, it came to light that MCpl. Rice's testimony had contradicted testimony he had given in a previous trial. At the eventual motion for a new trial hearing, Ellington submitted MCpl. Rice's previous testimony and training materials that also contradicted his testimony. The testimony and training materials supported the defense expert's testimony regarding average perception-reaction time. MCpl. Rice's previous testimony was also that glass debris definitely coincided with the impact point. The Supreme Court concluded that the evidence establishing MCpl. Rice's false testimony required that Ellington receive a new trial. *Id.* at 76, 253 P.3d at 750.

On June 27, 2011, Klein filed a motion to withdraw his guilty plea based on the *Ellington* decision. The court denied the motion for lack of jurisdiction. Klein then filed a petition for post-conviction relief alleging that the State failed to disclose impeachment information regarding MCpl. Rice, and that his counsel was ineffective for failing to file the motion to withdraw his guilty plea before the court lost jurisdiction. Klein also alleged that his trial

---

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

counsel was ineffective for failing to obtain an independent accident reconstruction expert and failing to thoroughly investigate the case. The district court summarily dismissed the first two claims, but concluded that an evidentiary hearing was required on the claim that counsel's investigation of the case was deficient.

After the evidentiary hearing, the district court made the following findings of fact. Klein was represented in the criminal proceedings by Justin Oleson. After the initial trooper testified at the preliminary hearing, Oleson had concerns about the accuracy of the report. Oleson and Klein discussed the option of retaining an accident reconstruction expert to rebut the conclusions of the initial report. Klein gave Oleson authority to seek out an accident reconstruction expert. Oleson then learned that MCpl. Rice had prepared an accident reconstruction report. During discovery, Oleson received the report, photos of the accident scene, and photos of the vehicles. MCpl. Rice's report also concluded that the accident was caused by Klein crossing into the other lane.

Oleson contacted an accident reconstruction expert and talked to the expert about the circumstances of Klein's accident and the opposing expert's testimony. Oleson did not recall if he went over MCpl. Rice's findings, but they did discuss MCpl. Rice's credentials and experience. The expert advised Oleson that MCpl. Rice had significant qualifications and experience and that it would be very difficult to rebut his conclusions. Oleson also had experience with MCpl. Rice on a prior unrelated matter that led Oleson to believe that MCpl. Rice made a very good witness when testifying before a jury. At one point, Oleson had a telephone conversation with MCpl. Rice. They discussed the other trooper's report as well as MCpl. Rice's opinions regarding the accident. In Oleson's mind, MCpl. Rice was able to provide sufficient explanations as to the conclusions that had raised concerns in the other trooper's report.

Oleson then talked to Klein about his telephone calls with the accident reconstruction expert and MCpl. Rice. Oleson told Klein that the accident reconstruction expert believed it would be very difficult to refute MCpl. Rice's conclusions. He also told Klein about his own prior experience observing MCpl. Rice as a witness. However, Oleson told Klein that based on his experience with expert witnesses, they could probably find an expert who could refute MCpl.

3

Rice and the initial trooper's conclusions, if Klein was willing to pay for it.[3] Oleson and Klein then discussed whether it made financial sense to hire an accident reconstruction expert under the circumstances. They discussed the likelihood of prevailing at trial, the weaknesses of any potential defense due to Klein's blood alcohol concentration, Klein's lack of memory, and the two expert witnesses who would testify that Klein crossed the centerline while failing to yield. Klein indicated that he was tired of being in the Custer County Jail and felt that he had no defenses. Klein ultimately determined not to hire a reconstruction expert and decided to accept the State's plea agreement. The decision was later confirmed in a letter from Oleson to Klein.

The district court concluded that Oleson provided effective assistance of counsel in relaying the information he had gathered about potential experts and the strength of the State's case. The court also determined that Klein failed to establish that he would not have pled guilty because he chose to accept a favorable plea agreement and pled guilty knowing an expert could have been obtained that would contradict the State's experts. Accordingly, the district court denied Klein's petition for post-conviction relief. Klein timely appeals.

## II.

## ANALYSIS

### A.    Summary Dismissal

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding governed by the Idaho Rules of Civil Procedure. I.C. § 19-4907; *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The

---

[3]    This indeed was the case. At the evidentiary hearing, Klein introduced an accident reconstruction report that concluded that the accident resulted due to the other vehicle's speed, and that the collision occurred near the centerline.

petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924

5

P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

### 1. Impeachment evidence

Klein argues his due process rights were violated when the State failed to disclose impeachment evidence before he pled guilty. The district court summarily dismissed this claim, concluding the State did not have a duty to disclose the impeachment evidence.[4] Due process requires all material exculpatory evidence known to the State or in its possession be disclosed to

---

[4] The court also concluded that any impeachment evidence regarding MCpl. Rice had become too attenuated to affect Klein's decision to plead guilty. Because we conclude that the State did not have a duty to disclose the information under *Brady*, we do not address this alternative basis.

the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Dunlap v. State*, 141 Idaho 50, 64, 106 P.3d 376, 390 (2004). This duty also extends to providing material impeachment evidence before trial. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Dunlap*, 141 Idaho at 64, 106 P.3d at 390. "There are three essential components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Dunlap*, 141 Idaho at 64, 106 P.3d at 390 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). However, the United States Constitution does not require the State to disclose material impeachment information prior to entering a plea agreement with the defendant. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). On the other hand, where the State fails to disclose exculpatory evidence, "a guilty plea entered in ignorance of those facts may not be knowing and intelligent though it is otherwise voluntary." *State v. Gardner*, 126 Idaho 428, 434, 885 P.2d 1144, 1150 (Ct. App. 1994).

In *Ruiz*, the United States Supreme Court examined whether due process required the disclosure of impeachment information before a plea agreement. In determining the State does not have a duty to disclose, the Court reasoned that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Ruiz*, 536 U.S. at 629. The Court explained: "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances–even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.*

The Court also noted that the constitution does not require complete awareness of the relevant circumstances:

> [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. *See Brady v. United States*, [397 U.S. 742, 757 (1970)] (defendant "misapprehended the quality of the State's case"); *ibid.* (defendant misapprehended "the likely penalties"); *ibid.* (defendant failed to "anticipate" a change in the law regarding relevant "punishments"); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (counsel "misjudged the admissibility" of a "confession"); *United States v. Broce*, 488 U.S.

7

563, 573, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (counsel failed to point out a potential defense); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (counsel failed to find a potential constitutional infirmity in grand jury proceedings). It is difficult to distinguish, in terms of importance, (1) a defendant's ignorance of grounds for impeachment of potential witnesses at a possible future trial from (2) the varying forms of ignorance at issue in these cases.

*Ruiz*, 536 U.S. at 630-31.

Finally, based on due process considerations,[5] the Court surmised that disclosure is not required because of the relatively minimal constitutional benefit of requiring disclosure compared to the radical change that would result in the criminal justice system if it was required. *Id.* at 632. The constitutional safeguards in accepting a guilty plea and the State's agreement to provide all exculpatory evidence in the plea agreement provide protection against an innocent person pleading guilty. Whereas, requiring the State to anticipate all potential impeachment information would create a burden on the criminal justice system that heavily relies upon plea bargaining. From all this, the Court concluded "that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

Klein does not contend that MCpl. Rice's testimony was anything other than impeachment evidence. Instead, Klein argues that *Ruiz* should not apply because he entered an *Alford* plea and could not remember the night of the collision. He explains that an innocent person may plead guilty based on the failure to recall the events of the crime. We cannot accept this distinction. First, a defendant's claim of memory loss may or may not be valid. Requiring disclosure in these cases would essentially force the State to go through the process of examining all potential impeachment evidence that may exist before allowing a defendant to plead guilty whenever a defendant claims innocence or ignorance. This is exactly the burden the Supreme Court sought to avoid in *Ruiz*. Second, under *Gardner*, the State has a duty to disclose exculpatory evidence before a guilty plea, which helps safeguard against an innocent person pleading guilty. Finally, the guilty plea must also comply with due process and the Idaho

---

[5] "[D]ue process considerations include not only (1) the nature of the private interest at stake, but also (2) the value of the additional safeguard, and (3) the adverse impact of the requirement upon the Government's interests." *United States v. Ruiz*, 536 U.S. 622, 631 (2002).

8

Criminal Rules, which ensures that defendants' pleas are accepted within certain standards. *See Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008); *see also* I.C.R. 11.

Klein also attempts to distinguish *Ruiz* by noting the United States Supreme Court has recently extended the right to counsel during plea negotiations, *Missouri v. Frye*, __ U.S. __, __, 132 S. Ct. 1399, 1407-08 (2012), and in deciding whether to accept or reject a plea offer, *Lafler v. Cooper*, __ U.S. __, __, 132 S. Ct. 1376, 1387 (2012). Klein argues this right to counsel is meaningless unless the attorney had access to all of the State's impeachment and exculpatory evidence. We disagree. If anything, the additional protection of the right to counsel further obviates the need to require disclosure.

Because MCpl. Rice's past testimony was impeachment evidence, the State did not have a duty to disclose it before Klein pled guilty. Therefore, the court did not err in summarily dismissing Klein's due process claim.

### 2. Failure to timely file motion

Klein argues that Oleson's conduct fell below the reasonable standard of representation by failing to stay apprised of the relevant law. The district court summarily dismissed this claim, concluding that Oleson's failure to know of a recently filed case did not fall below the professional standard of care. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other

9

shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Oleson filed a motion to withdraw Klein's guilty plea on June 27, 2011. However, Klein's judgment had already become final on June 3, 2011. The basis of the motion to withdraw was the Idaho Supreme Court's characterization of MCpl. Rice's credibility in *Ellington*. This decision was filed on May 27, 2011--seven days before Klein's judgment became final. From this, Klein alleges that Oleson failed to stay apprised of the relevant law of his case, which resulted in the untimely filing of the motion to withdraw.

When Klein's case became final on June 3, 2011, *Ellington* was not final. The remittitur was not issued until June 17, 2011. Until the Court's opinion became final, it was subject to withdrawal or modification. We cannot say that counsel is ineffective for failing to be aware of a pending case that is relevant only as to the factual circumstances of that case.[6] *See State v. Brown*, 245 P.3d 776, 778 (Wash. App. 2011) ("[T]rial counsel's failure to advise his client of pending cases during the plea bargaining process cannot constitute ineffective assistance."). This is especially true considering when *Ellington* was filed Klein had already been sentenced, no direct appeal was filed, and no pending matter existed for review. Accordingly, the district court's summary dismissal of this claim was proper.

## B. Denial of Claim After Evidentiary Hearing

Klein argued that Oleson was ineffective for failing to independently investigate the accident or meaningfully consult with an independent accident reconstruction expert. After an evidentiary hearing, the district court denied relief under this claim finding that Oleson's conduct did not fall below an objective standard of reasonableness and that Klein could not establish prejudice.[7] In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. Idaho Code § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675,

---

[6]     We note that Klein did not allege that Oleson actually knew of the circumstances in *Ellington*, only that Oleson should have known of the case.

[7]     Though we need not address the court's conclusion that Klein could not establish prejudice, we note Klein had a difficult task of establishing that he would not have pled guilty considering his extreme intoxication at the time of the collision, his incriminating statements, and two troopers concluding he crossed the centerline.

677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence, are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

Determining whether an attorney's pretrial preparation falls below a level of reasonable performance constitutes a question of law, but is essentially premised upon the circumstances surrounding the attorney's investigation. *Thomas v. State*, 145 Idaho 765, 769, 185 P.3d 921, 925 (Ct. App. 2008). A petitioner must establish that the inadequacies complained of would have made a difference in the outcome of trial. *Id.* It is not sufficient merely to allege that counsel may have discovered a weakness in the State's case. *Id.* We will not second-guess trial counsel in the particularities of trial preparation. *Id.*

Klein's characterization of Oleson's conduct as failing to investigate or consult with an independent accident reconstruction expert is belied by the district court's findings. The factual findings, which have not been challenged, establish that after the first trooper testified at the preliminary hearing, Oleson was concerned about the reliability of the report. Oleson and Klein then agreed that Oleson should seek out an accident reconstruction expert. Thereafter, MCpl. Rice's report became available that addressed the concerns of the earlier report. More importantly, MCpl. Rice's report agreed with the earlier report that the collision was a result of Klein crossing the centerline. Oleson then contacted an independent accident reconstruction expert who advised it would be difficult to contradict MCpl. Rice's report. Oleson also contacted MCpl. Rice who further explained his report; Oleson found his explanation credible. At this point, Oleson talked to Klein about whether to hire an accident reconstruction expert based on the reports, what the expert had indicated about MCpl. Rice's qualifications, and the circumstances of the case. Oleson indicated that they could likely find an expert who would contradict MCpl. Rice. The pair discussed the strength of the State's case considering the two reports that concluded Klein had crossed the centerline, Klein's extreme intoxication, the

11

incriminating statements Klein made immediately after the accident, and the State's offer of a plea agreement. Klein then made the conscious decision not to obtain an accident reconstruction expert. Oleson's conduct obtaining preliminary information regarding the reports and potential experts was not unreasonable. Oleson's decision not to hire an expert, according to Klein's instructions, was certainly reasonable.

Klein argues that Oleson should have discussed the case more thoroughly with an independent expert before talking to Klein about his options. Klein indicates Oleson should have obtained an expert to gather vast amounts of data, evaluate and analyze the data, and then determine, based upon accepted laws of physics and engineering, how the accident likely occurred. However, Oleson's decision to first discuss the circumstances with an independent expert and determine the cost of retaining the expert's services, and then ask Klein if he desired to pay the expert to undertake these tasks was in accord with Klein's instructions to first seek out an expert. Oleson then told Klein that he could obtain an expert that would contradict MCpl. Rice, but Klein chose not to pay for one.

Klein also argues that Oleson should have conducted his own investigation of the crash scene and taken measurements, or hired someone to investigate. Oleson is not an expert in accident reconstruction and, as the district court concluded, it is immaterial whether Oleson would have gone to the scene to take measurements and photographs. Oleson relying on the accident reports and photographs taken by the troopers to familiarize himself with the case is not unreasonable. As to hiring someone, Oleson discussed this option with Klein, but Klein decided not to hire an expert to conduct the necessary investigation. Because Oleson's conduct did not fall below the professional standard of representation, the district court properly denied Klein's petition for post-conviction relief.

### III.

### CONCLUSION

Klein has failed to show his due process rights were violated and failed to establish that his attorney provided ineffective assistance of counsel. Therefore, the district court's summary dismissal of two of Klein's claims and the judgment denying his remaining post-conviction claim are affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

12